[Civ. No. 21140.  Second Dist., Div. One.  Dec. 16, 1955.]

A. PIVARDIERE et al., Respondents, v. RUBY MERCURIO, Appellant; ALYCE GALLOWAY, Intervener and Respondent.

Albert A. Albeck and Max Albeck for Appellant.

Frye & Yudelson for Respondents.

Robert H. Sanders for Intervener and Respondent.

DORAN, J.—This is an appeal from the judgment.

As recited in appellant's brief, "Plaintiffs brought an action against defendant for specific performance of an agreement and escrow instructions to exchange their property for defendant's property.

"The complaint alleged the execution of the exchange

agreement on September 17, 1953, and the exchange escrow instructions on the following day.

"The exchange agreement provided for the exchange of plaintiffs' 4-unit apartment house located on Riverside Drive, North Hollywood, California, together with certain furnishings, for defendant's 20-unit motel, known as the Santa Fe Motel, located on Firestone Boulevard in South Gate, California, together with all furnishings except for those in the manager's apartment. The agreement further provided that plaintiffs' property was priced at $37,900.00 and was subject to a trust deed in the sum of $13,704.39, payable $145.00 per month 'at 5½%', leaving an equity of $24,195.61 as of September 1, 1953; that defendant's property was priced at $95,000.00 subject to a loan of record of $47,150.00 (a superimposed figure) payable $530.00 per month at 6% interest, leaving an equity of '$47,150.00' (also a corrected figure). In addition to the exchange of these properties, the agreement further provided for the transfer by plaintiffs to defendant of a trust deed on a parcel of property in Laguna Beach in the sum of $19,474.00 payable $125.00 per month at 5% interest and for the payment of $3,480.00 (a superimposed figure) by plaintiffs to defendant. Provision was made for termite clearance to be furnished by both parties and payment of real estate commissions in the sum of $1,895.00 by plaintiffs and $2,850.00 by defendant.

"The exchange escrow instructions executed the following day similarly provided for the exchange of the properties and transfer of the Laguna Beach trust deed. However, in this document it was provided that defendant was to pay to plaintiffs $4,180.39 in addition to the transfer of her motel to them, and that the assignment of the Laguna Beach trust deed was to be 'without recourse.'

"Plaintiffs alleged that the escrow instructions carried out the exchange agreement.

"The complaint further alleged performance of the agreement and escrow instructions by plaintiffs except for the deposit of $1,680.39 in the escrow. As an excuse for such default in performance, it was alleged that the deposit of this sum was not required 'except upon a certain date and pursuant to the performance of certain conditions by defendant Ruby Mercurio', and that prior to the time 'of said performance by the plaintiffs', defendant rescinded and repudiated the agreement. It was further alleged that the value of defendant's equity in her property was substantially

equal to the value of the property to be transferred to her by plaintiffs, that the agreement and escrow instructions were fair, just and reasonable to each of the parties and that defendant's repudiation of the agreement was without justification.''

The $1,680.39 above mentioned was paid later. Other incidental questions such as real estate commissions, accounting, etc., referred to in other causes of actions need not be detailed.

''Plaintiffs prayed for specific performance of both, the exchange agreement and the exchange escrow instructions, or in the alternative, for the damages alleged in the Second Cause of Action, and for an accounting of the rents as set forth in the Third Cause of Action.''

As recited in appellant's opening brief, ''An answer and cross-complaint was filed by defendant. In her answer, defendant alleged general and specific denials of the allegations of the complaint except that she admitted the execution of the exchange agreement and the exchange escrow instructions, but alleged that they were procured by mistake, fraud and misrepresentation, that she rescinded and repudiated the agreements on those grounds, and that she has continuously remained in possession of the motel and collected the rents therefrom. As a second defense, defendant alleged the lack of plaintiffs' right to maintain the action by reason of their default.

''Defendant's cross-complaint was for fraud, money had and received, cancellation and damages. In addition to the plaintiffs, the escrow holder Liberty Escrow Company and the real estate broker Alyce Galloway, doing business as Galloway Company, were named as cross-defendants.''

The trial judge, following a lengthy trial, rendered judgment in favor of plaintiffs.

It is contended on appeal.

''(1) That the exchange agreement and exchange escrow instructions are not sufficiently certain to warrant specific performance;

''(2) That the failure of intervenor to deliver a copy of the exchange agreement to defendant at the time her signature was obtained as required by Section 10142 of the Business and Professions Code, rendered the agreement invalid and unenforceable;

''(3) That defendant had no mutually enforceable remedy of specific performance against the plaintiffs;

''(4) That the findings of fact are insufficient to support the judgment;

"(5) That the finding that plaintiffs and defendant entered into the exchange agreement and exchange escrow agreement is contradictory and inconsistent with the finding that plaintiffs were required to pay defendant the sum of $4,180.39;

"(6) That there is no substantial evidence to support certain specified findings of fact;

"(7) That the exclusion and admission of evidence as specified was error;

"(8) That there was a fatal variance between the pleading, proof and the judgment;

"(9) That the complaint for specific performance does not state a cause of action."

With regard to Item I, respondent points out that, "The pleadings of the defendant and the transcript of the lengthy trial had in this matter are completely devoid of any contention by the defendant that her contract with plaintiffs was uncertain in any particular as to the price to be paid or which of the parties was to pay to the other the $4,180.39."

Appellant's reply is as follows: "Respondents then argue that defendant never raised the question of the uncertainty of the contract in the pleadings or at the trial. The answer to this argument is that if the contract pleaded is uncertain then the complaint fails to state a cause of action for specific performance." Thus this issue is raised for the first time on appeal. The record supports respondents' contention with relation to this issue.

With regard to Item II, this contention is highly technical. As pointed out by respondent, "there is no evidence that defendant was mislead or prejudiced in any way by the failure to give defendant a copy of the Exchange Agreement. Said Exchange Agreement was signed by defendant the evening of September 15, 1953, the very next morning, all of the parties met and the escrow instructions were prepared and executed. Certainly, the terms of the Agreement were at that time still fresh in the minds of all of the parties. Also, neither plaintiffs nor the defendant asked intervenor for a copy of said Exchange Agreement until defendant decided to attempt to rescind, at which time intervenor promptly delivered copies."

As to Item IV, it too is technical. The argument on this subject relates to the insufficiency of the findings. Without going into detail, it is noted that a reveiw of the record reveals no prejudicial error in this regard.

Intervener respondent, the broker in the transaction, points

out that, "After the Exchange Agreement was signed, it was agreed between the parties that they would go to escrow the following morning. It was Appellant who suggested the Liberty Escrow Company. The parties all met again the following morning at the Liberty Escrow Company. Each of the parties brought numerous documents, which were subsequently introduced in evidence, and which were left with the escrow. The escrow instructions were signed after being prepared by June Connelly, the Escrow Clerk, and after each of the parties had an opportunity to read them.

"Subsequent to the escrow, there appeared to be no dissatisfaction with this transaction until shortly before September 30, 1953, when Mrs. Mercurio had a conversation with Intervenor in which Appellant stated that she could not go through with the deal if she had to pay the termite bill which was approximately $1,200.00. Thereafter, Mrs. Mercurio, accompanied by a woman then unknown to the parties but identified as a Mrs. Gellerman, a broker, spoke with the Intervenor and stated, in Mrs. Mercurio's presence, that she, Mrs. Gellerman, thought that this was a bad deal, and that she could sell Appellant's property and that her sale would be a better transaction. After this conversation, Appellant sent a Notice of Rescission and Cancellation on September 30, 1953.

"Subsequently, Respondents brought this action."

The issues are largely questions of fact. These issues of course are for the trial judge to decide. Unless there is a lack of evidence to support them the appellate court is without power to intervene. A review of record reveals that the evidence is sufficient to support the findings.

The record reveals no prejudice as to the court's rulings on the admissibility and inadmissibility of evidence and appellant's contention "that there was a fatal variance between the pleadings, proof and the judgment," lacks support in the record.

A review of the record reveals no prejudicial error. The judgment is affirmed.

White, P. J., and Nourse (Paul), J. pro tem.,* concurred.

A petition for a rehearing was denied January 11, 1956, and appellant's petition for a hearing by the Supreme Court was denied February 8, 1956.

---

*Assigned by Chairman of Judicial Council.